UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH VAN DER MAAS,

      Plaintiff,

v.                                                          Case No. 1:04-CV-455

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,       Hon. Wendell A. Miles

      Defendant.
_____/

## OPINION AND ORDER

      Plaintiff, Ruth Van der Maas, filed this action for judicial review of the final decision of the Commissioner of Social Security that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  42 U.S.C. §§ 416(i), 423.  United States Magistrate Judge Ellen S. Carmody submitted a Report and Recommendation, (Dkt # 19), recommending that the Commissioner of Social Security's decision be affirmed.  Plaintiff filed objections to the Magistrate Judge's Report and Recommendation. (Dkt. # 20). The Defendant did not respond to the objections.  For the reasons that follow, the Court overrules Plaintiff's objections, and adopts the Report and Recommendation of the Magistrate Judge in its entirety.

### Standard of Review

      When objections have been made to a magistrate judge's report and recommendation, the district court's standard of review of the report and recommendation is *de novo*. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1).  Judicial review of a final decision regarding disability benefits is

limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. Warner v. Comm'r of Soc. Sec., 375 F. 3d 387, 390 (6th Cir., 2004). There is substantial evidence when a "'reasonable mind might accept'" the relevant evidence "'as adequate to support a conclusion.'" Id. quoting Kirk v. Sec. of Health & Human Servs., 667 F. 2d 524, 535 (6th Cir. 1981). If there is substantial evidence supporting the Commissioner's decision, the court must defer to the decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion . . . .'" Id., quoting Wright v. Massanaari, 321 F. 3d 611, 614 (6th Cir. 2003). The court may not make credibility determinations or resolve conflicts in the evidence. Walters v. Comm'r of Soc. Sec., 127 F. 3d 525, 528 (6th Cir. 1997).

Procedural Background

On August 19, 1996, Plaintiff filed an application for DIB benefits claiming she became disabled on March 1, 1995 (Tr. 57-58 ), due to fibromyalgia, asthma, chronic fatigue, immune dysfunction, reconstructed right knee and left ankle, hypothyroidism, possible multiple connective tissue disorder, and possible somatoform disorder (Tr. 57, 71, 77, 88). The application was denied initially and after a hearing before an Administrative Law Judge (ALJ). The decision became final on September 7, 2000, when the Appeals Council denied review. Plaintiff filed a complaint in this court on September 20, 2000[1], and on September 13, 2001, the court entered a stipulated order remanding the case for further review (Tr. 573).

---

[1] Van Der Maas v. Commissioner, United States District Court, Western District of Michigan, case number 1:00-cv-856.

After remand, a hearing was held before a different ALJ.  On September 19, 2002, the ALJ issued a decision denying benefits, finding that, between the alleged onset of disability date, March 1, 1995, and Plaintiff's last day of insured status, December 31, 1998, Plaintiff had a somatoform disorder and mild arthritis of her right knee. The ALJ concluded that on her last date of insured status, Plaintiff had the residual functional capacity to perform a significant range of light work, with "moderate limitations in the ability to understand, remember, and carry out detailed instructions and complete a normal workday or workweek without interruptions from psychologically based symptoms." (Tr. 558).  A vocational expert testified that there were approximately 15,000 jobs that a person with Plaintiff's residual functional capacity and the additional moderate limitations could perform.   The ALJ found that, although Plaintiff could not do her past work, there were a significant number of jobs she could perform. The ALJ's decision became final on May 24, 2004, when the Appeals Council declined Plaintiff's request for review.  Plaintiff filed the present case on July 6, 2004.

Factual Background

Plaintiff was 54 years old when her insured status expired on December 31, 1998 (Tr. 57, 631), and was 55 days short of her 55th birthday.  She has bachelor degrees in philosophy and religion and a master's degree in medieval history and, at the time of hearing, had partially completed the requirements for a Ph.D. (Tr. 105, 397, 514).   Her experience includes work as an assistant professor, census crew leader, precinct inspector, and workbook editor. (Tr. 74, 150, 550).  In 2000, Plaintiff worked for the United States Census Bureau from April through July and earned $10, 247. (Tr. 551).

Plaintiff fractured her left ankle on February 15, 1994 (Tr. 262), which required two surgical fixations. (Tr. 253). On March 30, 1994, an examination of Plaintiff's ankle revealed "good signs of early healing," and "maintenance of good position." (Tr. 261). On June 14, 1994, Plaintiff had normal range of motion in her ankle, and reported no problems with the ankle unless she did "a lot of walking on hard surfaces." (Tr. 260). A September 7, 1994 x-ray of Plaintiff's left ankle showed that it was healed, and Plaintiff was able to walk normally (Tr. 259). On April 20, 1998, and again on December 16, 1998, Plaintiff complained that the screws in her ankle were bothering her (Tr. 463). The hardware in Plaintiff's left ankle was removed on December 31, 1998. (Tr. 462).

On October 5, 1995, Dr. John Walen, Plaintiff's treating physician, noted that Plaintiff "continues with multiple vague somatic complaints in addition to her (few) real symptoms - I can't quite convince her to follow-up with counseling for what I presume is a somatization disorder." (Tr. 328). Plaintiff complained to Dr. Kim Eastman of right shoulder pain and trouble with her left ankle in November and December 1995 (Tr. 256-258), and of right knee problems in July 1996 (Tr. 256-257). Dr. Kim Eastman noted in July 1996, that Plaintiff would like to have the plate and screws removed from her left ankle, and that this could be done "as needed in the future." (Tr. 256).

Plaintiff was examined by Dr. R. Gonzalez on August 8, 1996. (Tr. 265). Plaintiff reported chronic fatigue, difficulty sleeping and concentrating, lightheadedness, a tendency to fall for no reason, and a tendency to drop things. (Tr. 265). Plaintiff further reported that she had experienced blackouts and paresthesias in her left hand, left foot, and face. (Tr. 265-266). Dr. Gonzalez's examination was "unremarkable." (Tr. 266). The doctor concluded that Plaintiff did

"not qualify for inclusion in chronic fatigue syndrome." (Tr. 266). The results of an August 17, 1996 MRI examination of Plaintiff's brain were normal. (Tr. 332).

Dr. Richard Goodstein examined Plaintiff on September 13, 1996, and results were unremarkable. Dr. Goodstein's impression was a "complex" suggestive of "dyssomnia secondary to either depression or an anxiety disorder." (Tr. 356). He "strongly" encouraged an evaluation by a clinical psychologist before any sleep studies were performed. (Tr. 356).

Plaintiff was seen by Dr. Amanda Huver on October 10, 1996. Plaintiff's primary complaints were muscle aches and pains, fatigue and sleep pattern disturbances. (Tr. 376). Plaintiff reported difficulty with remote and recent memory, and difficulties with concentration and understanding what she reads. (Tr. 376). All fibromyalgia points were positive except for the Achilles, and the doctor concluded "probable" fibromyalgia for which she prescribed medication. (Tr. 376). The remaining examination was normal. (Tr. 376). Dr. Huver also recommended that Plaintiff undergo psychological evaluation. (Tr. 367).

Dr. Arthur Jongsma, Ph.D evaluated Plaintiff on May 5, 1997. While Plaintiff presented a lengthy list of symptoms, she reported she could not work because of "fatigue, muscle spasms and fibromyalgia. (Tr. 396). Plaintiff reported that she and her husband were socially active; she sang in the symphonic chorus and volunteered for the Grand Rapids Symphony; attended church and volunteered as a counselor one night each week. (Tr. 397). She also reported she had been organizing a forum on fibromyalgia to take place at Aquinas College. During the day Plaintiff did housework, crafts and a little gardening. Dr. Jongsma diagnosed an undifferentiated somatoform (Tr. 399), noting that Plaintiff was a "normal functioning individual who has considerable intellectual capacity," and who showed no evidence of cognitive deficits. He

further noted that Plaintiff "does seem to exaggerate her physical and cognitive problems." (Tr. 398-99).

On December 4, 1997, Dr. Yelena Yavich examined Plaintiff, and concluded that Plaintiff's complaints of shortness of breath "could be related to just plain deconditioning." (Tr. 422).

On March 7, 1998, Plaintiff reported that she cooks, does laundry, gardens, dusts, mops, washes dishes, shops, performs household repairs, reads, watches television, sews, swims, completes puzzles, plays computer games, sings, makes jewelry, visits with friends and family, walks her dog, and participates in church activities and the symphony chorus. (Tr. 139-48).

In December 1998, Plaintiff was evaluated at the Mayo Clinic. The Clinic report noted possible asthma and probable vocal cord dysfunction. The testing revealed "no clear-cut cause" for Plaintiff's reported fatigue, and "she did not have trigger points to suggest fibromyalgia or similar causes." . The examination in regard to hypertension showed "no significant abnormalities." The results of an ANA test were "positive but not markedly positive." "Despite the positive laboratory tests, [Plaintiff] dos not have clinical features to suggest SLE [lupus] or anti-phospholipid syndrome. The fatigue is consistent with SLE, but she does not have other features." Finally, a psychiatric evaluation "suggested the diagnosis of somatization disorder," and counseling was recommended. (Tr. 468 ).

Dr. Daniel DeWitt, Ph.D. began treating Plaintiff on December 17, 1998, meeting with her nine times. (Tr. 500). Dr. DeWitt diagnosed undifferentiated somatoform disorder and an adjustment disorder with mild depressed mood. (Tr. 501). The doctor's clinical impression was that it is "expected that [Plaintiff's] reaction to stress will be to develop physical symptoms,"

6

because "[i]ndividuals with this profile typically do not identify their problems as psychological in nature, but rather present with complaints about physical problems." (Tr. 501).

In April 1999, after her insured status had expired, an exercise stress test revealed no evidence of abnormality. (Tr. 499).

## Discussion

Plaintiff raises two objections to the Magistrate Judge's Report and Recommendation. First, Plaintiff contends that the ALJ undervalued Plaintiff's chronic fatigue syndrome and left ankle impairment, and the Magistrate Judge improperly accepted the ALJ's characterization of the evidence. Second, the ALJ failed to properly analyze Plaintiff's borderline age situation, performing the analysis with improper evidence and applying an improper standard of review. The time period relevant to Plaintiff's claim is March 1, 1995, her alleged disability onset date, and December 31, 1998, the last date of her insured status.

### I. Chronic fatigue and left ankle impairment

The ALJ concluded that the evidence did not support Plaintiff's claim of chronic fatigue syndrome, and that there was no evidence that Plaintiff suffered from a severe impairment of the left ankle as of the date her insured status expired. The Report and Recommendation states that "even were the court to conclude otherwise, such does not call into question the substantiality of the evidence supporting the ALJ's decision," (docket # 19, p. 17), which is the correct standard of review. If there is substantial evidence supporting the ALJ's finding, the court must defer to that finding even if there is also substantial evidence that would support an opposite conclusion. Longworth v. Comm'r of Soc. Sec., 402 F. 3d 591, 595 (6th Cir. 2005). While an ALJ is required to develop the record fully and fairly, "'an ALJ is not required to discuss all the evidence

7

submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" Simons v. Barnhart, 114 Fed. App'x. 727, 733, 2004 WL 2633448 (6th Cir. 2004) (citing Craig v. Apfel, 212 F. 3d 433, 436 (8th Cir. 2000)).

Plaintiff claims the limitations and pain she experienced with her left ankle were disabling. In regard to Plaintiff's left ankle condition, the ALJ stated that:

> the claimant suffered a left malleolar ankle fracture in 1994 and underwent surgery. She was non-weight bearing for three weeks. Hardware was removed in 1998 and the claimant had some difficulties in 1999; however this was after her last date last insured for benefits.

(Tr. 552). The record shows that Plaintiff complained to Dr. Kim Eastman of trouble with her left ankle in November and December 1995 (Tr. 257-258), and that the hardware in her ankle was eventually removed in 1998. In May 1997, Plaintiff reported she could not work because of fatigue, muscle spasms and fibromyalgia, but did not list her ankle problem as a disabling condition. In March 1998, Plaintiff reported that until two years earlier she was trying to ski every day (Tr. 168), which would be inconsistent with a disabling ankle condition. In the same report, Plaintiff stated that the non-daily pain in her left ankle was "rarely as intense as the fibromyalgia pain" (Tr. 166), and that "pain is not my biggest problem." (Tr. 169). There is substantial evidence in the record to support a determination that, during the relevant time, Plaintiff did not have an ankle condition was either so restrictive or so painful as to be disabling.

In reaching her conclusion with regard to Chronic Fatigue Syndrome, the ALJ specifically noted the Mayo Clinic evaluation, which ruled out fibromyalgia and lupus as causes of Plaintiff's fatigue but did not result in a diagnosis of Chronic Fatigue Syndrome, and the pre-onset, normal MRIs which were consistent with the 1996, normal MRI. However, the record also contained

Dr. Gonzalez's 1996 conclusion that Plaintiff did not suffer from Chronic Fatigue Syndrome; Dr. Goodstein's 1996 conclusion that Plaintiff's fatigue was secondary to anxiety or an anxiety disorder and his recommendation that Plaintiff undergo an evaluation by a clinical psychologist before sleep studies were performed; and a 1996 MRI that was normal. (Tr. 332).  There was ample evidence in the record to support a determination that Plaintiff's somotoform disorder was the underlying cause of Plaintiff's reported fatigue.  The ALJ's hypothetical to the VE included "moderate limitations in the ability to . . . complete a normal workday or workweek without interruptions from psychologically based symptoms," which would include Plaintiff's fatigue.  The ALJ adequately considered Plaintiff' fatigue when she evaluated Plaintiff's residual functional capacity and the types of jobs that were available to her.  Thus, the ALJ did not commit reversible error, even if it is assumed that Plaintiff's reported fatigue is, in fact, caused by Chronic Fatigue Syndrome. See  Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir.1987).

II.  Borderline Age

Plaintiff was 54 years old when her insured status expired on December 31, 1998, and was 55 days short of her 55th birthday. Plaintiff argues that because her chronic fatigue and ankle pain left her with less stamina and less mobility than a typical 54-year old worker, she should have been considered a 55-year old worker, or of "advanced age."   At advanced age, with a residual functional capacity of light work and no transferable skills from her skilled or semi-skilled work experience, under the medical-vocational guidelines Plaintiff would be disabled.

Generally, the claimant's age at the time of the decision governs. Varley v. Sec'y of Health & Human Servs., 820 F. 2d 777, 780 (6th Cir. 1987).  The regulations, however, state that

9

the age categories must not be applied mechanically in a "borderline situation." 20 C.F.R. § 404.1563(a). A borderline situation exists where a claimant is within a few months of a higher age category, and using the higher age category would result in a decision of disabled. Russell v. Comm. of Social Security, 20 F. Supp. 2d 1133, 1135 (W.D. Mich. 1998). In Crady v. Secretary of Health and Human Services, 835 F.2d 617, 622 (6th Cir.1987), the court explained that the "fact that age categories are not to be applied mechanically ⋯ obviously does not mean that a claimant must be moved mechanically to the next age category whenever his chronological age is close to that category." In a borderline situation the ALJ must determine if there are additional adverse vocational factors so that placing the claimant in the higher age category would more accurately reflect the claimant's work capacity. See Russell, 20 F. Supp. 2d at 1135.

The ALJ considered Plaintiff's borderline age situation. The ALJ noted that Plaintiff's condition deteriorated after her last date of insured status, and that Plaintiff had reported she was fully mobile before April 1999. As discussed, the record does not establish that during the relevant time period Plaintiff's left ankle constituted a significant adverse vocational factor. In her hypothetical to the Vocational Expert, the ALJ included Plaintiff's additional vocational limitations caused by "psychologically based symptoms," which would necessarily factor in Plaintiff's reported fatigue. Thus, the ALJ did not mechanically apply the age categories, but based upon substantial evidence, did not find additional, adverse vocational factors that would warrant placing Plaintiff in a higher age category.

## Conclusion

Having reviewed the record and the Magistrate Judge's Report and Recommendation, the court finds that the Magistrate Judge reached the correct conclusion in the Report and Recommendation. Accordingly, the court OVERRULES the Plaintiff's objections, and ACCEPTS AND ADOPTS the Magistrate Judge's Report and Recommendation.

So ordered this 15th day of September, 2005.

      /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge